A. F. SAIN, B. Z. SAIN, et al., v. W. T. LOVE, WADE S. BUICE, et al.

(Filed 28 January, 1935.)

**Banks and Banking H b—Complaint held to allege cause accruing to receiver against bank directors and depositors could not maintain action.**

A complaint setting out certain duties of the officers and directors of a bank and alleging that defendants, officers and directors of the bank in question, brought about a merger of several small banks which resulted in the insolvency of the parent bank, that defendants loaned directly or indirectly to various officers and directors sums exceeding a half-million dollars, and that defendants wrongfully received or wrongfully permitted employees to receive deposits of plaintiffs and others when they knew the bank to be insolvent, and that by reason of defendants' wrongful acts as alleged plaintiffs were damaged in the sum of their deposits, less a dividend paid by the receiver of the bank, *is held* to state a cause of action accruing to the receiver for wrongful acts resulting in loss to the bank, and in the absence of allegation that demand had been made upon the receiver to bring the action, defendants' demurrer to the complaint was properly sustained.

CIVIL ACTION, before *Oglesby, J.,* at January Term, 1934, of LINCOLN.

The plaintiffs named in the complaint are residents of Lincoln County, and the defendants were officers and directors of the Commercial Bank and Trust Company, which maintained its main office and place of business at Gastonia, North Carolina, and which had branch offices at Mt. Holly, Lincolnton, Kings Mountain, and Cherryville in said State.

Plaintiffs bring the suit on behalf of themselves and other depositors of the bank. A list of such depositors appears in the complaint and numbers approximately two hundred and sixty-five names. This list shows the amount of the deposit of each of said depositors and these sums range from $1.79 to $13,814.25. The total of such deposits is $149,336.05.

The pertinent allegations in the complaint may be capitulated as follows:

(A) "That from the date of their qualification as directors and officers aforesaid that said defendants assumed and were legally bound to perform the duties of said positions for the protection and conservation of the assets of said banking institution, and in fact and law the corporate powers, business, and property of the said bank were exercised, conducted, and controlled by the defendants herein named as directors of said banking institution, the duties of said positions being substantially as follows:

"To keep closely in touch with all of the affairs of said institution, to keep themselves informed about its financial condition, and state of its assets and liabilities, the condition of its reserve fund, the amount, character, and solvency of its loans and discounts, and to so manage and superintend its affairs as to prevent a discount or purchase of paper not financially good or safe, and at all times to see to it that its reserve was maintained in accordance with law; and, likewise, they were responsible at stated intervals to examine the discount books and records of said institution as to its loans and discounts; that it was further the duty of said directors to appoint at all reasonable times proper auditors and audit agents for the purpose of having careful and correct accountings submitted to said board, and each member thereof, for their personal consideration and information, and that it was further the duty of said board, and each member thereof, at all times to have direct and first-hand information as to the amount of the currency and securities on hand, and to know the value of said securities, and to see to it they were kept safely, and that the value thereof was not unreasonably allowed to become depreciated by delays or neglect in the collection thereof, and to generally supervise all of the activities of said banking institution in order that its solvency be sustained, its legal reserve kept intact, and

your complainants say that they severally relied upon the defendants as such directors in said behalf, and because of said reliance deposited their money in said banking institution in the amounts hereinafter stated."

(B) "That at the time of the merger of the various banking institutions . . . no additional capital was added to the outstanding capital. . . . That these plaintiffs are informed and believe that the capital stock of all of said banking institutions were impaired at the time of the said merger, and that the cash market value of the assets of such banks was insufficient to pay their respective liabilities to depositors and other creditors, . . . and that therefore the said institution was insolvent."

(C) "That the defendants, acting as board of directors of said parent bank, well knew that said institution was insolvent and could only hope to remain open for business by a concentrated effort individually and collectively . . . to influence the public, and particularly the plaintiffs herein, to deposit money in said insolvent institution, and that in furtherance of said organized effort the said defendants, at various times and by various and sundry representations, schemes, and untruthful and misleading statements as hereinafter set out, caused the public, and particularly the plaintiffs herein, to deposit their money as a class, namely, unsecured depositors, in said institution."

(D) "That in spite of the knowledge on the part of the defendants, acting as directors of said parent bank, that the said bank was insolvent, unsafe, and without assets sufficient to meet its deposit liabilities and other creditors at the time of its organization, the defendants continued with reckless disregard of the rights of the plaintiffs and the general public . . . to operate a banking institution with full knowledge that the financial condition of the said institution was hopelessly involved, . . . and said defendants wrongfully received or wrongfully permitted the employees of the bank to receive deposits in said insolvent institution, and particularly the deposits of the plaintiffs. . . . That the plaintiffs, at various times between the opening of said parent bank on 11 February, 1927, to the date of its closing on 4 April, 1929, severally deposited in said bank as a class, namely, unsecured depositors, varying amounts as more particularly set out, . . . which said statement represents the amount of deposits to the credit of the various plaintiffs named therein at the time of the closing of the parent bank on 4 April, 1929, less 40 per cent dividend paid by the receiver."

(E) "That the defendants loaned or permitted to be loaned directly or indirectly to the officers and directors of the institution the sum of $525,867.44."

·(F) "That by reason of the wrongful acts of the defendants as hereinbefore set out, the plaintiffs have met with a loss individually and collectively in the sum of $149,336.05."

The prayer of the complaint was that the plaintiffs have judgment against the defendant "jointly and severally in the sum of $149,336.05," etc.

The defendants demurred to the complaint for that:

1. There was a misjoinder of causes of action and parties.

2. That the complaint does not state facts sufficient to constitute a cause of action in behalf of plaintiffs, as they have suffered no special damages peculiar to themselves as distinguished from all other depositors of said trust company, and further, that the right to institute the action rested solely with the Commissioner of Banks.

It appears from the complaint that the bank was closed on 4 April, 1929.

The trial judge was of the opinion that the demurrer should be sustained and the action dismissed, and from judgment accordingly plaintiffs appeal.

*W. H. Childs, W. M. Nicholson, and J. Laurence Jones for plaintiffs.*
*Clyde R. Hoey, W. C. Feimster, A. C. Jones, E. B. Denny, E. R. Warren, and A. L. Quickel for defendants.*

BROGDEN, J. The ultimate question in the case is whether the words of the complaint, reasonably construed, classify the action within the principle of *Douglass v. Dawson,* 190 N. C., 458, 130 S. E., 195, or within the principle applied in *Bane v. Powell,* 192 N. C., 387, 135 S. E., 118.

One of the distinctions between those two cases was pointed out in *Wall v. Howard,* 194 N. C., 310, 139 S. E., 449. *Stacy, C. J.,* writing in *Corporation Commission v. Bank,* 193 N. C., 113, 136 S. E., 362, declares: "That the right of action against the officers and directors of a banking corporation for loss or depreciation of the company's assets, due to their wilful or negligent failure to perform their official duties, is a right accruing to the bank, enforceable by the bank itself, prior to insolvency, and hence enforceable by the receiver for the benefit of the bank, as well as for the benefit of its creditors, is the holding or rationale of all the decisions on the subject."

The thought movement of the complaint begins with specifically pointing out the duties of the officers and directors and defining them to be: (a) Accurate information as to assets and liabilities; (b) condition of reserve fund; (c) character and insolvency of loans and discounts, and "to so manage and superintend its affairs as to prevent a

discount or purchase of paper not financially good for sale, and at all times to see to it that its reserve was maintained in accordance with law." It is then alleged that the directors and officers brought about a merger of several small banks, and that as a result of the merger the parent bank was thereby rendered insolvent. Furthermore, it was asserted that the officers and defendants, with reckless disregard of the rights of the plaintiffs, wrongfully received or wrongfully permitted employees to receive deposits of the plaintiffs and others, well knowing that the institution was insolvent. It was further alleged that the defendants had loaned directly or indirectly to various officers and directors of the bank sums of money exceeding a half million dollars.

The concluding paragraph of the complaint asserts "that by reason of the wrongful acts of defendants, as hereinbefore set out, plaintiffs have met with a loss individually and collectively in the sum of $149,336.05," etc.

There is no specific allegation that the Commissioner of Banks took charge of the assets of the Commercial Bank and Trust Company of Gastonia when its doors were closed on 4 April, 1929, but it does appear from paragraph 15 of the complaint that the plaintiffs have received a forty per cent dividend, "paid by the receiver."

There is no allegation that demand has been made upon the receiver or Commissioner of Banks to institute an action against the officers and directors, or that such receiver has otherwise failed to perform his duties.

An analysis of the complaint leads the court to the conclusion that the complaint invokes the principles applied in *Douglass v. Dawson, supra; Roscower v. Bizzell,* 199 N. C., 656, 155 S. E., 558, and *Merrimon v. Asheville,* 201 N. C., 181.

Affirmed.