WORD, Appellant, *v.* UNION BANK & TRUST CO. et al., Respondents.

(No. 8,065.)

(Submitted May 28, 1940. Decided July 8, 1940. Opinion Withdrawn and Opinion on Motion for Rehearing Filed December 7, 1940, substituted.)

[107 Pac. (2d) 1083.]

*Mr. Robert L. Word, Jr.,* and *Mr. George E. Hurd,* for Appellant, submitted an original and a reply brief; *Mr. Hurd* argued the cause orally.

*Messrs. Gunn, Rasch, Hall & Gunn,* for Respondents, submitted a brief; *Mr. M. S. Gunn* argued the cause orally.

MR. JUSTICE ERICKSON delivered the opinion of the court.

This appeal is from a judgment entered in favor of the defendants after a demurrer to the plaintiffs' second amended complaint had been sustained. The question before us is the correctness of the trial court's ruling on the demurrer.

The allegations of the complaint set out the following:

That the Beaverhead Ranch Company was incorporated under the laws of this state in 1907 and its charter expired in the year 1927, at which time Lewis Penwell, C. B. Witter, H. H. Pigott and Mathias Staff were four of the five qualified directors; that ever since the dissolution they have been and now are trustees of the property and assets of said company for its creditors and stockholders solely for the purpose of settling and liquidating its affairs; that at the time of the dissolution

and ever since the plaintiff was the owner of 50 shares of capital stock of said dissolved corporation and the owner of two bonds of the value of $500 each; that after dissolution the individual defendants, as trustees for the creditors and stockholders, borrowed money from the defendant bank and invested the money in the purchase of sheep, in violation of their trust and that the investment resulted in a loss, whereby the value of the stock and bonds of the plaintiff was destroyed; that the money was loaned pursuant to a conspiracy between the bank and the individual defendants, which had for its purpose the acquisition of all the property of the corporation by or for the bank; that in May, 1934, defendant Pigott was appointed receiver of the assets and property of the dissolved corporation.

The gist of the plaintiffs' cause of action is the breach of the obligation to wind up the affairs of the corporation under the duty imposed by section 6011, Revised Codes; instead of doing this it is alleged in effect that the trustees branched out into further business enterprise and thereby caused the trust estate to become insolvent. Judgment is sought against the defendants personally and plaintiff does not seek any remedy against the corpus of the trust estate.

The grounds of the demurrer are that (1) the complaint does not state facts sufficient to state a cause of action, and (2) that there is a defect of parties plaintiff for the reason that the action cannot be maintained except by or through the corporation, or on behalf of all stockholders and creditors.

The argument of the defendants in support of the demurrer is contained in the following excerpt from their brief: ''It will be noted that the plaintiff and appellant bases her right of recovery solely on the allegation that she is a stockholder and a creditor. She does not allege or claim that she has suffered any damage except the depreciation of the value of her stock and bonds and the wrongs complained of had the same effect upon the value of all of the stock and the claims of all of the creditors.''

Many cases are cited by defendants in support of the rule that an individual stockholder cannot maintain a suit of this

character for the reason stated in 3 Fletcher on Corporations, section 1282: ''Individual stockholders cannot sue the officers at law for damages on the theory that they are entitled to damages because the mismanagement has rendered their stock of less value or worthless, since the injury is, in law, not to them individually, but to the corporation—to the stockholders collectively.'' (See *Niles* v. *New York Central & H. R. R. Co.*, 176 N. Y. 119, 68 N. E. 142; *Gary* v. *Matthews*, 148 S. C. 125, 145 S. E. 702; *Converse* v. *United Shoe Machinery Co.*, 185 Mass. 422, 70 N. E. 444; *Hayden* v. *Perfection Cooler Co.*, 227 Mass. 589, 116 N. E. 871; *Seitz* v. *Michel*, 148 Minn. 474, 181 N. W. 106; *Roscower* v. *Bizzell*, 199 N. C. 656, 155 S. E. 558; *Backus-Brooks Co.* v. *Northern Pac. R. Co.*, (8 Cir.) 21 Fed. (2d) 4. But compare *McConnell* v. *Combination Mining & Mill. Co.*, 30 Mont. 239, 76 Pac. 194, 104 Am. St. Rep. 703, and Id., 31 Mont. 563, 79 Pac. 248, and *Moss* v. *Goodhart*, 47 Mont. 257, 131 Pac. 1071.) All of the cases cited deal with a corporation which has retained its legal entity.

Since the facts in this case involve a dissolved corporation, it becomes unnecessary to determine whether the complaint would be sufficient as against a going concern. We deal only with the directors of a dissolved corporation. On this question we are impressed by the rule set out in the following cases:

After reciting the general rule, the federal court thus said: ''When, however, a corporation ceases to be a going concern and a receiver is appointed, all rights of the corporation vest in the receiver. (*Porter* v. *Sabin*, 149 U. S. [473] 475, 13 Sup. Ct. 1008, 37 L. Ed. 815.) By the same token upon the dissolution of a corporation, the trustees at the time of the dissolution shall be trustees of the creditors and stockholders (sec. 3707, Rem. & Bal. Code), 'and shall have full power and authority to sue for and recover the debts and property of the corporation.' Upon dissolution of the corporation, the corporate entity ceased. The corporation has no power to sue. All rights of the corporation are ended, and the property and funds of the corporation are vested in the trustees for the stockholders. All debts are paid, it is alleged. The trustees are trustees not of the

corporation, but by operation of statute, of the individual stock-holders, to the extent of the interest of the stockholder in the fund or property. If the trustee is guilty of wrongdoing, the remedy of the stockholder cannot be through the corporation because it has no entity." (*Denman* v. *Richardson,* (D. C.) 284 Fed. 592, 593, certiorari denied 266 U. S. 619, 45 Sup. Ct. 98, 69 L. Ed. 471.)

In the case of *McClean* v. *Bradley,* (D. C.) 282 Fed. 1011, 1016, affirmed, (6 Cir.) 299 Fed. 379, certiorari denied 266 U. S. 619, 45 Sup. Ct. 98, 69 L. Ed. 471, the court said: "At the outset we are met by defendants' insistence that this action is one brought in the right of the corporation, that it is what is known as a derivative action, and that in such an action the corporation itself is an indispensable party. This doctrine was held inapplicable by Judge Cooper in the companion case of *Gardiner* v. *Automatic Arms Co.,* (D. C.), 275 Fed. 697. When the franchise of the corporation was revoked by the state of New Jersey, by the laws of that state the members of its last board of directors, which included Bradley, Calfee, and Cowles, became trustees for the settlement and determination of its affairs. It was their duty to get in the outstandings, reduce them to cash, pay the creditors, and distribute the balance, if any, to the stockholders. No creditor now complains. Any assets in the hands of the trustees are not for the corporation, as such, but for the stockholders, subject to the claims of the creditors. Any sum recovered would not pass to the treasury of this corporation, but to the corpus of the trust estate [the suit being one in equity to set aside a sale of the corporate patents and for an accounting of the profits made thereby]. *The stockholders, therefore, sue in their own right, not in the right of the corporation.* Under such circumstances, there would seem to be no necessity of making the defunct corporation a party, or of allowing the administration of justice to be defeated by the impossibility of getting it and the other defendants [other stockholders] into the same court anywhere. Therefore it is thought that the well-settled principle that, when stockholders sue in the right of the corporation, it must be made

a party (*Davenport* v. *Dows,* 85 U. S. 626, 21 L. Ed. 938) has no application to this case (*Southern Pac. Co.* v. *Bogert,* 250 U. S. 483, 488, 39 Sup. Ct. 533, 63 L. Ed. 1099; *Ervin* v. *Oregon Ry. & Nav. Co.* (C. C.), 20 Fed. 577; *Stearns Coal & Lumber Co.* v. *Van Winkle,* (6 Cir.) 221 Fed. 590, 137 C. C. A. 314). Consequently the case is to be considered upon its merits." (Compare *Watts* v. *Vanderbilt,* (2 Cir.) 45 Fed. (2d) 968.)

Assuming that trustees under section 6011, Revised Codes (the amendment of Chapter 198, Laws 1937, not affecting this case) are subject to the same rules as in the case of an ordinary trustee, may they be sued individually and not in their trust capacity in tort by the beneficiaries of the trust, and if so may one of the beneficiaries bring suit alone for his damage?

65 Corpus Juris, page 1008, states, "Where there has been a breach of trust or where trust property has been misappropriated, one beneficially interested may at his election bring an action either at law or equity." There are numerous citations of authorities of which many cases allow damages for conversion—a tort.

As to the specific nature and extent of liability (65 C. J. 661, sec. 525) the following statement is made: "A trustee is not personally liable in a suit to enforce a trust if he has acted in good faith in executing it; but he is personally liable to the *cestui que trust* for any loss or damage occasioned to the trust fund or property by a violation of his trust, and this liability, where more than one trustee participates in the breach of trust, is both joint and several. Thus a trustee is personally liable for a loss occasioned by his improperly disposing of the trust property, or wrongfully distributing or misappropriating the trust funds, or investing the trust fund as the individual property of the trustee, or by the negligent conduct of litigation. The claim against the trustee for the breach of trust is in the nature of a general demand for damages; and an action cannot be maintained unless the *cestui que trust* can show that he has been deprived of a benefit or sustained an injury in consequence thereof. The measure of the trustee's liability in such cases ordinarily is, at the option of the *cestui que trust,* the amount

actually lost by the breach or the amount which the trustee has gained thereby; and under some statutes the trustee may even be held liable for exemplary damages. If the violation of trust is in the use of the trust property by the trustee, the measure of damages is the profits realized from its use while it was held by him.

There are some cases together with Restatement of the Law of Trusts (secs. 198–e and 199–c) which use language seemingly inconsistent with the vast number of decided cases. The explanation of these seemingly inconsistent statements, however, lies in the common-law distinction between law and equity. The law courts did not recognize the trust, hence any remedy which might be enforced through the trust relationship must have been in equity. In other words, the Restatement seems to apply to a situation wherein the suit is brought against the trustee in his fiduciary capacity.

The old distinction between courts of law and equity does not obtain in Montana, and the reluctance of either court to interfere with the existent jurisdiction of the other does not apply. But even if the separate jurisdiction existed, no clash could result in this instance, for here the trust of the defendant trustees has been closed by the appointment of a receiver, and no equitable action exists with which a law action can conflict.

This seems to be the only satisfactory theory upon which to reconcile with the Restatement the holdings in the following cases which directly hold the action at law applicable against a trustee in his personal capacity as to liability for tort: *Lathrop* v. *Bampton,* 31 Cal. 17, 89 Am. Dec. 141; *Holderman* v. *Hood,* 70 Kan. 267, 78 Pac. 838; *Anglo California Nat. Bank* v. *Lazard,* (9 Cir.) 106 Fed. (2d) 693; *In re Roche's Will,* 233 App. Div. 236, 251 N. Y. Supp. 347; *Sharts* v. *Douglas,* 94 Ind. App. 201, 163 N. E. 109; *Brys* v. *Pratt,* 55 Wash. 122, 104 Pac. 169; Perry on Law of Trusts & Trustee, 7th ed., p. 1438; II Scott on Trusts, sec. 198.2; 19 Va. Law Rev. 72; 65 C. J. 661.

The case of *Lathrop* v. *Bampton,* (Cal.), supra, seems to adopt this theory in the following language: ''When *cestui que trust may elect between personal liability and specific property.*

Where a trustee, in violation of his trust, invests the trust property or its proceeds in any other property, the *cestui que trust* may elect to hold the substituted property subject to the trust, or to hold the trustee personally liable to him for the breach of the trust. The former he can do, however, only when he can follow and identify the property, either in its original or substituted form, as we have already seen. If this cannot be done, the right of the *cestui que trust* to elect is gone, because its exercise has become impossible, and he is therefore forced to rely upon the personal liability of the trustee; and such seems to be the condition of the *cestui que trust* in the present case. When thus forced to rely upon the personal liability of the trustee, a *cestui que trust* occupies a position towards the estate of the trustee which is no better, but is identical with that of a simple contract creditor. He has no special lien upon the general estate of the trustee which is superior to that of any other creditor; for the specific property covered by the trust is gone, and nothing is left to the *cestui que trust* except a naked claim for damages generally, on account of the breach to be obtained through an action at law, attended by all the incidents of a like action on behalf of one who is not the beneficiary of a trust.''

In Montana, section 7897 states the measure of liability for breach of trust: ''A trustee who uses or disposes of the trust property contrary to section 7889 may, at the option of the beneficiary, be required to account for all profits so made, or to pay the value of its use, and, if he has disposed thereof, to replace it, with its fruits, or to account for its proceeds, with interest.''

It would seem that this section specifies only equitable remedies and as such may be taken as providing for equitable remedies against the trustee in his fiduciary capacity, but it does not limit the *cestui que trust's* remedies at law. That is evidenced by the very next section (7898), which provides: ''A trustee who uses or disposes of the trust property in any manner not authorized by the trust, but in good faith, and with intent to serve the interests of the beneficiary, is liable only to make good whatever is lost to the beneficiary by his error.'' The case of

*Glendenning* v. *Slayton,* 55 Mont. 586, 179 Pac. 817, 819, recognizes the right to sue at law. In that case the court, speaking through Mr. Chief Justice Brantly, said: ''By accepting it, the defendants became voluntary trustees for the benefit of plaintiffs and the corporation (Rev. Codes, sec. 5371), and thus became bound to the highest good faith in executing the trust (sec. 5374). They could not deal with it for their own benefit or for any other purpose not connected with the trust. (Sec. 5375.) The title to the deposit remained in the plaintiffs until all the attached conditions had been fulfilled, and any disposition of it contrary to the agreement between plaintiffs and the corporation amounted to a conversion of it, rendering the defendants liable. The plaintiffs, deeming themselves wronged by the disposition of it by the defendants, were at liberty to bring action against them, either for damages for a conversion, or in assumpsit for money had and received. As we read the complaint, counsel elected to sue in assumpsit upon the implied promise of defendants to return the deposit to them upon the failure of the corporation within a reasonable time to fulfill the conditions upon which it was made.''

In North Dakota, a state having a statute in the same language as ours, the supreme court has directly held that the existence of such a statute allowing equitable relief does not preclude relief in damages. (*Prondzinski* v. *Garbutt,* 10 N. D. 300, 86 N. W. 969.)

The second ground of the demurrer is that the plaintiff should have joined as parties plaintiff the other stockholders and creditors. This ground of demurrer can have no force in the type of action alleged in the complaint, whether considered in the light of a trustee beneficiary relationship or a stockholder director relationship. What we have said with reference to the right of action determines this contention. The other stockholders and creditors, if any, have no interest in this cause of action and any relief which might be obtained would in no way diminish the assets of the dissolved corporation in the hands of the receiver. The recovery would be against the defendants

personally. (See 14A C. J., sec. 3899, and cases of *Ervin* v. *Oregon Ry. & Nav. Co.*, (C. C.) 20 Fed. 577, 581.)

In the *Ervin Case* the plaintiffs were some of the stockholders in a corporation called by the court the "old company." One Villard organized a new company after acquiring 40,000 shares of stock in the old company. He had himself elected president of the new company and then proceeded to have the directors of the new company elected directors of the old company. These directors then proceeded to dissolve the old company and sold the assets of the old company to the new company at a low price. The plaintiffs brought suit against the new company and Villard. The court held that the suit might be maintained by the individual stockholder, and among other things said: "It is urged that if the corporation is not a necessary party to the suit, no relief can be had unless all the stockholders are made parties. * * * Who these stockholders are, and whether they are within the jurisdiction of the court, does not appear. If the only relief prayed by the bill, or which could be granted upon the facts alleged, were a rescission of the sale of the property, the objection might be fatal. (*Ribon* v. *Chicago, R. I. & P. Railroad Co.*, 16 Wall. 446 [21 L. Ed. 367].) No relief could be granted without affecting the rights of every stockholder. But the redress which is given to a *cestui que trust*, or an equitable owner of a fund, in case of a fraudulent purchase by the trustee or other fiduciary, is either rescission or account, at the election of the injured party. (Bisp. Eq. 239.) Here the complainants pray for an account, and the decree may limit them to that relief. No rights of the other stockholders will be affected if such relief is granted to the complainants. Although the defendants may be called upon to meet similar claims in behalf of other stockholders, that circumstance does not stand in the way of the complainants. It suffices that relief can be granted which will not affect the rights of other stockholders. Nor does it matter that there may be other stockholders of the corporation who co-operated with the defendants in the wrongs complained of. The theory of the bill is that these defendants, while occupying the fiduciary relation

towards complainants of equitable joint-owners of the property, bought it themselves at an inadequate price, and by unfair means. They are in the position of quasi trustees, who have been guilty of a fraudulent breach of their trust. The right of action in such a case is *ex delicto,* and the tort may be treated as several or joint, and the trustees have no right of contribution as between themselves. (*Peck* v. *Ellis,* 2 Johns. Ch. (N. Y.) 131; *Miller* v. *Fenton,* 11 Paige (N. Y.), 18; *Heath* v. *Erie Ry. Co.* [Fed. Cas. No. 6,306], 8 Blatchf. 347; *Wilkinson* v. *Parry,* 4 Russ. 272; *Franco* v. *Franco,* 3 Ves. 75.'' What is said in the *Ervin Case* is applicable here.

If the matter is construed as an ordinary trust case, and the plaintiff sues the defendant in his personal capacity, then he need not join all of the other beneficiaries (or stockholders). The beneficiary has elected to treat herself as a general creditor of the trustees personally. (*Lathrop* v. *Bampton,* supra.) Consequently a recovery would jeopardize the right of another beneficiary in no manner other than recovery by one creditor might jeopardize the availability of funds for another creditor. See, also, 65 C. J. 1031: ''The trustee may be sued by one *cestui que trust* without making the other beneficiaries plaintiffs or defendants where the action is for a personal wrong.''

We find the complaint to be sufficient and the judgment is reversed and the cause is remanded, with directions to overrule the demurrer.

Mr. Chief Justice Johnson and Associate Justices Angstman and Arnold concur.

Mr. Justice Morris Concurring Specially:

Plaintiff alleges that the trustees exceeded their powers in handling the affairs of the defunct corporation by continuing operations as a going concern, and by reason of such illegal acts she, as a bond and stock holder, suffered injury, an action in tort. By virtue of the provisions of section 7898, Revised Codes, she is entitled to her day in court in order that it may be determined whether her allegations are true or false, and

290

judgment entered accordingly. I am therefore in accord with the majority in holding that the complaint states a cause of action and that the demurrer must be overruled, but I find no necessity whatever for adding anything more to these brief conclusions. What this court or the courts of other jurisdictions have said in other actions is of no consequence, or at least is of secondary importance, when, as here, we have a clear and specific statute setting forth the rights of the plaintiff in such an action as that at bar. The opinion of the majority—largely pure *dicta*—assumes, by argument and citation of authority, to prejudge the controversy on the merits, a course which tends to restrict the powers vested in the trial court before the action is tried on the merits.

Rehearing denied December 7, 1940.